609 A.2d 896

**In re Appeal of CAPITAL EXTENDED CARE from the Dauphin County Board of Assessment Appeals,**

**Tax Parcel No. 62 040 001 Municipality: Susquehanna Township; Assessment for the Years 1988, 1989, 1990, and Thereafter,**

**Property of Capital Extended Care, known as Harrisfield.**

**Appeal of CAPITAL EXTENDED CARE.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1992.
Decided May 18, 1992.

Michael J. Beautyman, for appellant.

Carl G. Wass, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, PELLEGRINI, FRIEDMAN, and KELLEY, JJ.

KELLEY, Judge.

Capital Extended Care (Capital) is a Pennsylvania non-profit corporation which operates the Harrisfield personal care home. The home opened in December of 1988. That same month Capital requested a real estate tax exemption for Harrisfield from the Dauphin County Board of Assessment Appeals. The board denied the request and Capital appealed to the Court of Common Pleas of Dauphin County which affirmed.

On appeal by Capital to this court, the issue we must address is whether the trial court erred in concluding that Harrisfield is not a purely public charity. The General Assembly is authorized to exempt institutions of purely public charity from taxation by art. VIII, § 2(a)(v) of the Pennsylva-

nia Constitution. The General Assembly took such action in § 204(a)(3) of The General County Assessment Law.[1] The question of whether an institution is one of purely public charity is a mixed question of law and fact on which the trial court's decision is binding, absent abuse of discretion or lack of supporting evidence. *G.D.L. Plaza v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987). The party seeking the exemption bears a heavy burden of proving its entitlement to the exemption. *Scripture Union v. Deitch*, 132 Pa.Commonwealth Ct. 134, 572 A.2d 51 (1990).

In *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), our Supreme Court stated that an entity qualifies as a purely public charity if it possesses the following characteristics:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

The trial court in this case concluded that Capital does not donate or render gratuitously a substantial portion of its services and does not benefit a substantial and indefinite class of persons who are legitimate subjects of charity.

The trial court's conclusion was based on the fact that the residents of Harrisfield pay an average of $1,400 per month as a rental fee. Although Capital argued before the trial court and argues here that its policy is to not evict residents because of an inability to pay, the trial court found that the personal care agreement which must be signed by the residents states that Harrisfield has the discretion to terminate the agreement in the event that no funds are available. The trial court also found that as of the date of the hearing, no resident has been unable to pay the monthly rental fee.

1. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(3).

Capital argues that the elderly and infirm persons who reside at Harrisfield are legitimate subjects of charity. Our Supreme Court has stated that legitimate subjects of charity are those who are unable to provide themselves with what the institution provides for them. *Y.M.C.A. of Germantown v. Philadelphia*, 323 Pa. 401, 187 A. 204 (1936). We recently stated in *St. Margaret Seneca Place v. Board of Property Assessment Appeals and Review, County of Allegheny*, 145 Pa.Cmwlth. 615, 604 A.2d 1119 (1992), that an institution is not tax exempt merely because it provides services to the elderly. In that case, where we reversed the grant of a tax exemption for a nursing home, we went on to state the following:

> We agree that the elderly are a legitimate subject of charity, and caring for the elderly may be considered charitable when speaking in generalities. However, when residents of a nursing home are required to pay the facility for their right to live there, the nursing home is not advancing a charitable purpose, but merely conducting business. In this case, *all* the residents of the nursing home are either self-paying or third-party paying customers whose patient population is expected to make the nursing home a profit. Although the nursing home contends that it admits patients without regard to their ability to pay, when the executive vice-president of the hospital was asked whether a non-paying resident would be admitted over a paying resident, he responded, 'We would be really forced I would think to take—we don't have a hard and fast rule to answer that question, but we would be prudent to take the person who could afford to pay us for the care.'

At p. 623, 604 A.2d at p. 1123 (emphasis in original). We can find little to distinguish the present case. At the trial court hearing, when asked whether it is fair to say that Harrisfield does not attract or desire to attract the indigent, the chief executive officer of Harrisfield responded in the affirmative (Reproduced Record, p. 62a). As in *St. Margaret Seneca Place,* all of the residents of Harrisfield were paying for their services at the time of the hearing.

■ To obtain a real estate tax exemption, an institution must prove not only that it provides services to a deserving group such as the elderly, but that it donates or renders a substantial portion of its services gratuitously. In order to meet this test, an institution must show that it makes a bona fide effort to service primarily those who cannot afford the usual fee. *Hospital Utilization Project,* 507 Pa. at 1, n. 9, 487 A.2d at 1315, n. 9. That is, an institution must prove that it actually provides its services to someone who cannot afford to pay. *In re Pittsburgh NMR Institute,* 133 Pa.Commonwealth Ct. 464, 577 A.2d 220 (1990).

In this regard, Capital has failed to meet its burden of proof. As stated above, no resident has been unable to pay the monthly rental fee charged by Harrisfield. There is therefore no evidence that Harrisfield provides its services to anyone who cannot afford to pay.

Capital attempted to meet its burden by introducing evidence that Harrisfield had operated at a loss for each fiscal year prior to the trial court hearing. However, the losses presented in the trial court were for fiscal years during which the home was not yet open or during which the home was not fully occupied. The trial court correctly concluded that the losses for those years can be explained by the fact that Harrisfield was not yet fully occupied and was not yet generating the maximum rental income of which it was capable. *County of Lehigh Appeal,* 100 Pa.Commonwealth Ct. 244, 515 A.2d 59 (1986), *petition for allowance of appeal denied,* 515 Pa. 589, 527 A.2d 548 (1987) and 515 Pa. 611, 529 A.2d 1084 (1987). Capital attempts to argue that since the trial court hearing it has continued to suffer losses with almost full occupancy, but this is evidence not of record and we will not consider it. If Capital wishes to reapply for the exemption and present new evidence, it may do so.

After reviewing the findings and conclusions of the trial court, and keeping in mind our scope of review, we can say that the court did not abuse its discretion in determining that Harrisfield is not a purely public charity. Accordingly, we will affirm the denial of the exemption.

## ORDER

NOW, this 18th day of May, 1992, the order of the Court of Common Pleas of Dauphin County, dated April 23, 1991, at No. 327–S–1990, is affirmed.